UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GEOFFREY STEVENS,<br><br>        Plaintiff,<br><br>v.<br><br>HEATHER LEE,<br><br>        Defendant. | Case No. 2:22-cv-00529-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |
| HEATHER LEE,<br><br>        Counter-claimant,<br><br>v.<br><br>GEOFFREY STEVENS,<br><br>        Counter-defendant. | |

## I. INTRODUCTION

Before the Court is Defendant Heather Lee's "Motion to Dismiss for Lack of Subject Matter Jurisdiction" ("Motion to Dismiss") (Dkt. 14) and "Motion to Strike Pleadings from Plaintiff's Complaint and Demand for Jury Trial and Subsequent Initial Disclosures" ("Motion to Strike"). Dkt. 15. On November 15, 2023, the Court heard oral argument and took the motions under advisement. Dkt. 28.

For the reasons set forth below, Lee's Motion to Dismiss and Motion to Strike are both DENIED.

## II. BACKGROUND

### A.  Factual Background

Plaintiff Geoffrey Stevens was a volunteer hockey coach for the Lewis Clark

Amateur Hockey Association and served as the head coach for the teenaged hockey group. In addition to volunteering as a youth hockey coach, Stevens is a pastor of a small church located in Kamiah, Idaho, and has been employed as a substitute teacher in schools in Asotin County, Washington.

Defendant Heather Lee has two teenagers who played for Stevens' youth hockey team. Lee's husband also served as an assistant coach ("Assistant Coach Lee") for the team. In early February of 2022, Stevens reprimanded Lee's children for their alleged misconduct as players on the hockey team. Prior to the reprimand, in response to complaints from other parents that Assistant Coach Lee was playing his children a disproportionate amount of time in comparison to other players, Stevens temporarily reduced the Lee children's playing time. Allegedly due to Stevens' reprimand and the reduction of her kids' playing time, Lee became an increasingly vocal critic of Stevens, and purportedly engaged in a pattern of retaliation against him.

Due in part to Lee's conduct, Stevens decided not to continue coaching the youth hockey team. When, in the fall of 2022, there were rumors that Stevens was going to return as head coach for the team, Lee publicly accused Stevens of sexual misconduct involving minors. Specifically, on approximately November 6, 2022, and thereafter, Lee posted accusations against Stevens on her public Facebook account, alleging Stevens had exposed his "fully nude genitals" to her minor children, and that Stevens had intimidated her children into remaining quiet regarding the alleged abuse. Dkt. 1, ¶ 9. Lee further claimed that Stevens told one of her children, "I am your coach. I am a pastor. I am above you. Nobody will ever believe you over me." *Id*.

MEMORANDUM DECISION AND ORDER - 2

Within the same Facebook posting, Lee published additional purported misinformation against Stevens, stating: "This was reported to the Lewiston Police Department in February 2022. Geoff Stevens is rumored to be considered for coaching the same child(ren) he violated during the 2021-2022 Ice Hockey Season. Why haven't you heard about this?" *Id*., ¶ 10. Lee's Facebook posting included a photo of Stevens, and further stated:

> Hold offenders accountable—Keep our children safe:
> • Listen to your children when they tell
> • They should tell even if the offender threatens them
> • They should tell even when the offender says nobody will believe them
> • Let them know YOU believe them
> • Notify law enforcement immediately.

*Id*.

> In concert with the above publication, Lee also posted:

> Does this make you uncomfortable? Good. It's uncomfortable for victims who were silenced instead of supported, who begin a new season without any justice, apology, or even acknowledgement of the disgusting behavior they endured last season. I reported this to Lewiston Police in February. They still have not contacted the primary victim for an interview or statement. Why is LPD not investigating reports like this against our children? . . . Geoffrey Stevens showed his penis to children.

*Id*., ¶ 13 (ellipsis in original).

Stevens contends Lee intentionally, and with malice, crafted false and inflammatory public statements to portray Stevens as a pedophile and criminal. Stevens alleges each of Lee's statements were false, and that Lee knew they were false at the time she published them online. Stevens maintains Lee also continued to defame him to the individuals who responded to her various posts.

On November 8, 2022, Stevens issued a cease-and-desist letter to Lee notifying her

MEMORANDUM DECISION AND ORDER - 3

that her social media postings were false and salacious, directing her to stop all further posts regarding Stevens, and ordering her to immediately remove and delete any posts about Stevens. Instead of complying with the cease-and-desist letter, Lee posted a copy of it on her Facebook account, along with a response that simply stated: "No." *Id.*, ¶ 17. Lee also allegedly continued to publish inflammatory statements about Stevens and left each of her previously posted statements about Stevens up on her public Facebook account.

### B.  Procedural Background

On December 29, 2022, Stevens filed the instant suit against Lee, alleging claims for defamation and defamation per se. Dkt. 1. In his Complaint, Stevens contends that as a direct and proximate cause of Lee's defamatory statements, he has suffered damages including "injury to his reputation; being subjected to public hatred, contempt and ridicule; severe emotional distress; embarrassment; and a loss of income." *Id.*, ¶ 26. Stevens maintains his damages "exceed the sum of $75,000 exclusive of any costs or interest, the exact amount of which will be proven at trial." *Id*. In addition to damages, Stevens seeks an award of attorney's fees and costs, prejudgment interest, and any other relief the Court deems just and equitable.

Stevens alleges the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00. *Id.*, ¶ 3. Lee admits that she and Stevens are citizens of different states but contends Stevens cannot meet the jurisdictional minimum. Dkt. 8, ¶ 3; Dkt. 14.

After filing an Answer and Counterclaim, Lee submitted the instant Motion to Dismiss. Dkt. 14. Pursuant to Federal Rule of Civil Procedure 12(b)(1), Lee argues the

Court lacks subject matter jurisdiction over Stevens' claims because he "failed to plead with particularity and in good faith" that his claims exceed the $75,000 amount in controversy required for the Court to exercise diversity jurisdiction under 28 U.S.C. § 1332. *Id*. at 2.

In conjunction with her Motion to Dismiss, Lee filed her Motion to Strike. Dkt. 15. In her Motion to Strike, Lee argues the Court should strike the portions of Stevens' Complaint, and of his Supplemental Initial Disclosures, that reference Stevens' work as a pastor. *Id.* Lee contends such references are "impertinent" because Stevens has failed to provide evidentiary support for his lost income as a pastor. *Id.* at 6–8.

### III. ANALYSIS

**A. Motion to Dismiss (Dkt. 14)**

*1. Legal Standard*

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (explaining federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree" (cleaned up)). Thus, if it "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims for lack of subject matter jurisdiction. A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be

either facial or factual."). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve a facial jurisdictional challenge, the court assumes the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled on other grounds by Munoz v. Superior Court of Los Angeles Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations and may review evidence outside of the complaint without converting the motion to dismiss into a motion for summary judgment. *Id*.

## 2.  Discussion

Lee does not challenge the jurisdictional allegations in Stevens' Complaint, but rather argues that Stevens' Supplemental Initial Disclosures revealed he cannot satisfy the $75,000.00 jurisdictional minimum. Specifically, Lee contends Stevens' Supplemental Initial Disclosures disclosed Stevens: (1) lost income of approximately $3,500.00 in his position as a substitute teacher; (2) does not claim economic losses in his profession as a pastor; and (3) seeks $250,000.00 in non-economic losses. Dkt. 14, at 3 (citing Dkt. 14-5). Because she relies on extrinsic evidence to challenge the Court's subject matter jurisdiction, Lee brings a factual attack. *Safe Air for Everyone*, 373 F.3d at 1039 (finding a

jurisdictional challenge was a factual attack where it did not assert lack of subject matter jurisdiction based solely on the pleadings).

Where, as here, a plaintiff files a diversity case in federal court, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). "It must appear to a *legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 289 (emphasis added). This standard "makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement." *Pachinger v. MGM Grand Hotels-Las Vegas, Inc*., 802 F.2d 362, 364 (9th Cir. 1986) (cleaned up). Indeed, only three recognized situations clearly meet the legal certainty standard: (1) "when the terms of a contract limit the plaintiff's possible recovery"; (2) "when a specific rule of law or measure of damages limits the amount of damages recoverable"; or (3) "when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (cleaned up).

Lee argues the third situation is applicable here.[1] Dkt. 14, at 7–9. Specifically, Lee contends "independent facts"—in the form of Stevens' Supplemental Initial Disclosures— show Stevens "only suffered economic losses in the amount of $3,500.00," and that Stevens does "not claim any other type of economic loss." Dkt. 14, at 8–9 (citing Dkt. 14-5). Although Stevens' Supplemental Initial Disclosures identified $250,000.00 in non-

---

[1] Lee does not suggest a contract or a specific rule of law or measure of damages limits Stevens' ability to recover more than $75,000.00. *See generally*, Dkt. 14.

economic losses arising from damage to his reputation (Dkt. 14-5, at 5) Lee contends Stevens claimed the latter amount solely to obtain federal jurisdiction. Dkt. 14, at 11–12. As such, Lee argues Stevens' "initial pleadings were not made in good faith." *Id*. at 6.

To assess Lee's factual attack on jurisdiction, the Court has reviewed Stevens' Supplemental Initial Disclosures and finds they do not demonstrate to a legal certainty either that Stevens cannot satisfy the $75,000.00 amount in controversy requirement, or that Stevens made his claims for relief "merely to obtain federal court jurisdiction." *Pachinger*, 802 F.2d at 364.

a. Amount in Controversy

Stevens alleges he incurred more than $75,000.00 in damages due to Lee's conduct. Dkt. 1, ¶¶ 3, 20, 23, 26. Lee contends Stevens cannot satisfy the jurisdictional minimum because Stevens' Supplemental Initial Disclosures "showed that he had only suffered economic losses in the amount of $3,500.00" and "did not claim any other type or economic loss." Dkt. 14, at 8. However, Stevens sought $3,500.00 in economic losses for one school year.[2] Dkt. 14-5, at 5. Stevens maintains he has not been contacted to substitute teach since Lee posted her allegedly defamatory statements. *Id*. Thus, at the rate of $3,500.00 per year, Stevens claims both actual economic losses for one school year, and future economic losses for future school years. As such, Stevens' economic damages are not limited to solely the $3,500.00 he lost in the school year following Lee's statements.

Moreover, in addition to his lost income as a substitute teacher, Stevens seeks more

---

[2] Stevens reserved the right to amend this estimate once the parties engage in discovery. Dkt. 14-5, at 5.

than $250,000.00 in non-economic damages for "injury to his reputation," "being subjected to public hatred, contempt and ridicule," "embarrassment," and "severe emotional distress." Dkt. 1, ¶¶ 23, 26; Dkt. 14-5, at 5. The amount-in-controversy calculation includes claims for general and special damages. *Richmond v. Allstate, Ins. Co.*, 897 F. Supp. 447, 449–50 (S.D. Cal. 1995). Given that Lee repeatedly and publicly accused him of sexually abusing children,[3] a jury could certainly find Stevens suffered reputational injury, public contempt, embarrassment, and emotional distress. Although it is not guaranteed that a jury would award Stevens more than $75,000.00 to compensate him for such injuries, the Court cannot find to a "legal certainty" that Stevens' damages are less than this amount. *Naffe*, 789 F.3d at 1040–41 (finding that due to the defendant's derogatory statements, a jury could reasonably award the plaintiff damages in excess of $75,000.00 for, *inter alia*, lost job opportunities, emotional distress, and harm to her reputation); *Scofield v. Guillard*, 2023 WL 7496739, at *6 (D. Idaho Nov. 13, 2023) (holding the court could not find to a legal certainty that plaintiff's claims were for less than $75,000.00 where plaintiff sought damages to compensate her for injury to her reputation and mental health as a result of defendant's alleged defamation).

Lee next argues dismissal is warranted because Stevens has not produced documentation of his economic losses. Citing the Restatement of Torts, Lee repeatedly argues a defamation plaintiff is required to establish his damages with "as much certainty

---

[3] In her Answer, Lee raises many affirmative defenses to Stevens' defamation claims, including that her statements about Stevens were true. Dkt. 8, at 3. Although Lee may establish the truth of her statements either on summary judgment or at trial, a valid defense to a claim does not deprive the court of subject matter jurisdiction. *St. Paul Mercury Indem.*, 303 U.S. at 289.

as the nature of the tort and the circumstances permit." Dkt. 14, at 5, 8; Dkt. 22, at 7–9 (quoting Restatement (Second) of Torts § 912 (1979)). This section of the Restatement involves a tort plaintiff's burden of proof at trial, and not what a plaintiff must plead to survive a motion to dismiss. Restatement (Second) of Torts § 912 (explaining "the recovery of damages for a particular harm is dependent upon proof that the harm occurred as the result of the tortious conduct"). At this early stage of proceedings, Stevens cannot be expected to prove his damages. Moreover, even if Stevens' defamation claims fail on summary judgment or at trial, a plaintiff's ultimate recovery does not oust the Court of jurisdiction. *St. Paul Mercury Indem*., 303 U.S. at 289. Lee's reliance on the Restatement of Torts is, accordingly, misplaced.

Further, Lee ignores that Stevens brings a claim for defamation per se.[4] Unlike in a general defamation action, where a plaintiff must allege and prove special damages, a defamation per se claim is actionable without allegation or proof of special damages. *Yoakum v. Hartford Fire Ins. Co*., 923 P.2d 416, 425 (Idaho 1996)[5]; *Siercke v. Siercke*, 476 P.3d 376, 385 (Idaho 2020); *Sadid v. Vailas*, 943 F. Supp. 2d 1125, 1134 (D. Idaho 2013) ("Idaho follows the common law rule allowing plaintiffs to receive an award of general damages without proof of special damages in defamation per se cases.") (citing *Barlow v. Int'l Harvester, Inc*., 522 P.2d 1102, 1117 (Idaho 1974)). General damages may be awarded

---

[4] A statement is per se defamatory if it imputes to the plaintiff: (1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the plaintiff's trade, business, profession, or office; or (4) serious sexual misconduct. *Yoakum v. Hartford Fire Ins. Co*., 923 P.2d 416, 425 (Idaho 1996). Stevens contends Lee's public statements were not only incompatible with his profession as a pastor and substitute teacher, but also accused him of both a criminal offense and of serious sexual misconduct. Dkt. 1, ¶ 8.
[5] In diversity cases, "federal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 466 (1965)

because the average plaintiff in a defamation case cannot easily quantify, for example, the loss of a reputation. 1 John Kircher & Christine M. Wiseman, Punitive Damages: Law and Practice 2d § 13:14 (2023 ed.). The concept of presumed damages in cases involving defamation per se "circumvent[s] the proof problem for the plaintiff by granting the jury almost unlimited discretion in determining the amount of compensatory damages in such cases." *Id*. "A potential award of presumed damages counts toward the jurisdictional amount." *Freeman Holdings of Arizona, LLC v. Does, 1-50*, 2013 WL 210810, at *2 (D. Ariz. Jan. 18, 2013). Given the nature of Lee's public statements about Stevens—and the resulting alleged injury to his professional and personal reputation—a jury could easily award Stevens more than $75,000.00 in presumed damages.

In sum, because it does not appear to a legal certainty that Stevens' claims are for less than $75,000.00, dismissal is not justified. *St. Paul Mercury Indem*., 303 U.S. at 289.

b.  Bad Faith

Lee next contends Stevens' claim, in his Supplemental Initial Disclosures, that he suffered "$250,000.00 in non-economic damages arising from damage to his reputation" was "only utilized by [Stevens] to reach federal jurisdiction." Dkt. 14, at 11–12. Lee does not base this allegation on any admissions by Stevens, evidence in the record, or any other independent facts. Instead, Lee simply asserts that $250,000.00 "is similar to the maximum amount the jury could award a Plaintiff under the statutory limitation for non-economic damages for certain torts [sic] damages and liabilities." *Id*. at 11 (citing Idaho Code § 6-1603). Lee's mere speculation that Stevens claimed $250,000.00 in non-economic damages solely to obtain federal jurisdiction falls far short of meeting the legal certainty

MEMORANDUM DECISION AND ORDER - 11

standard. Moreover, Idaho's statutory cap on non-economic damages does not even apply where, as Stevens alleges here,[6] the tortfeasor acted willfully or recklessly. Idaho Code § 6-1603(4)(a).

Lee also fails to identify any authority to suggest that the amount of damages was claimed merely to obtain federal jurisdiction. In support of her claim that Stevens identified $250,000.00 in non-economic damages solely to "reach federal jurisdiction," Lee relies heavily on a District of Connecticut case where the court posited that the plaintiff claimed $1,000.00 in general, and $9,000.00 in punitive, damages solely to meet the jurisdictional threshold.[7] Dkt. 14, at 6–7, 11 (citing *LeBlanc v. Spector*, 378 F. Supp. 301 (D. Conn. 1973)). Lee does not explain how Stevens' claim for *at least $175,000.00 more* than the current jurisdictional minimum suggests Stevens identified $250,000.00 in non-economic damages solely to satisfy the $75,000.00 amount in controversy requirement. Dkt. 14-5, at 5 ("Plaintiff asserts that he suffered *a minimum of $250,000* in non-economic damages arising from damage to his reputation.") (emphasis added). Further, in *LeBlanc*, the Court ultimately dismissed the plaintiff's case not because the plaintiff acted in bad faith in claiming exactly $10,000.00 in total damages, but because the diversity statute then required the plaintiff to allege an amount in controversy which exceeded $10,000.00. *LeBlanc*, 378 F. Supp. at 307–08. Because the plaintiff in *LeBlanc* sought exactly $10,000.00 in damages, the court dismissed the case, finding a claim limited to $10,000.00

---

[6] Dkt. 1, ¶¶ 11, 19.

[7] At the time *LeBlanc* was decided, 28 U.S.C. § 1332(a) required an amount in controversy exceeding "the value of $10,000, exclusive of interest and costs[.]" 378 F. Supp. at 305 n.1.

could not meet the jurisdictional minimum. *Id*. Unlike the plaintiff in *LeBlanc*, Stevens alleges the amount in controversy exceeds the $75,000.00 jurisdictional minimum.  Dkt. 1, ¶¶ 3, 20, 23, 26. Thus, even if *LeBlanc* was binding authority, it is inapplicable.

### 3.  Conclusion

In sum, it does not "appear to a legal certainty that Stevens' defamation claims are really for less than the jurisdictional amount." *Naffe*, 789 F.3d at 1040. Lee does not suggest a contract, rule of law, or measure of damages limits Stevens' ability to meet the amount-in-controversy requirement. *Id*. Nor has Lee identified independent facts or legal authority to suggest Stevens claimed $250,000.00 in non-economic damages solely to meet the amount in controversy requirement. *Id.* In the absence of either legal certainty that Stevens' claims are for less than $75,000.00, or any facts to suggest Stevens identified $250,000.00 in non-economic damages as a procedural maneuver to obtain federal jurisdiction, Lee's Motion to Dismiss is DENIED.

### B.  Motion to Strike (Dkt. 15)

### 1.  Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(f) allows the court to strike from "a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with such issues prior to trial. *Sidney-Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983). A court may not resolve disputed factual or legal issues in deciding a motion to strike. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). In addition, a court must view the challenged pleadings in the light

most favorable to the plaintiff when resolving a motion to strike. *Wailua Assocs. v. Aetna Cas. and Sur. Co*., 183 F.R.D. 550, 554 (D. Haw. 1998) (citing *Hoeft v. Tucson Unified Sch. Dist*., 967 F.2d 1298, 1301 (9th Cir. 1992)).

Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice[.]" *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); *Colaprico v. Sun Microsystems, Inc*., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."). Given their disfavored status, courts often require "a showing of prejudice by the moving party" before granting a motion to strike. *Sec. and Exch. Comm'n v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995). Whether to grant a motion to strike is within the court's discretion. *Whittlestone*, 618 F.3d at 973.

*2. Discussion*

Although it is not entirely clear from her Motion to Strike,[8] it appears Lee seeks to strike each paragraph of Stevens' Complaint that references Stevens' work as a pastor. Lee seeks to strike such references because, in his Supplemental Initial Disclosures, Stevens

---

[8] For instance, Lee first asks the Court to strike specific lines of paragraphs 6, 8, 20, 23, and 26 of Stevens' Complaint, but then, in the Conclusion of her Motion to Strike, requests that the Court strike specific portions of only Complaint paragraphs 6, 8, and 20. Dkt. 15, at 1, 10. In addition, although Lee's Motion to Strike is based upon Stevens' failure to claim economic loss from his work as a pastor, portions of Lee's Motion to Strike suggest the Court should strike any reference to the reputational and emotional distress damages Stevens alleges he has suffered. *Id*. at 1, 3 (contending the Court should strike paragraphs 23 and 26 of Stevens' Complaint). As explained above, Stevens maintains he suffered reputational and other presumed damages. Given this, and because paragraphs 23 and 26 of Stevens' Complaint do not reference his work as a pastor, Lee has failed to articulate any reason to strike the latter paragraphs from Stevens' Complaint. The Court accordingly addresses solely Lee's attempt to strike Stevens' reference to his pastoral work.

failed to identify, or to provide documentation for, his lost income as a pastor. *See generally*, Dkt. 15. Stevens opposes Lee's Motion to Strike, arguing it is both untimely and without merit. Dkt. 20. The Court agrees.

a. Timeliness

Under Rule 12(f), a Court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter" either: (1) on its own initiative; or (2) "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days of being served with the pleading." Fed. R. Civ. Proc. 12(f)(1)–(2). The Court does not view any of the allegations in Stevens' Complaint to be redundant, immaterial, impertinent, or scandalous. As such, the Court sees no reason to strike any portion of Stevens' Complaint on its own initiative pursuant to Rule 12(f)(1).

Lee's Motion to Strike is untimely under Rule 12(f)(2) because Lee did not file the Motion until nearly three months *after* she was served with Stevens' Complaint. In her Reply brief, Lee suggests her Motion to Strike was timely because she did not learn that Stevens disclaimed economic loss resulting from his work as pastor until Stevens responded to her Motion to Dismiss on May 10, 2023.[9] Dkt. 24, at 3. However, Lee does not cite any authority to suggest a Rule 12(f)(2) motion is timely if it relies on information discovered either after a responsive pleading, or more than 21-days after the defendant was served with the Complaint. Nor does Lee acknowledge that this Court expressly held to the contrary in a case Stevens cited in his response brief. Dkt. 20, at 3. Specifically, in *Hayes*

---

[9] In his response to Lee's Motion to Dismiss, Stevens explained he is "not claiming he suffered any economic loss resulting from him being a pastor." Dkt. 18, at 8.

*v. Nettles*, 2019 WL 5587216, at *2 (D. Idaho Oct. 29, 2019), this Court held a Motion to Strike was untimely even where, as here, the reason for filing the Motion to Strike—in *Hayes* a decision by the Idaho State Court of Appeals—did not arise until long after the pleadings had closed. *Id*. Regardless, even if the Court were to instead find Lee's Motion to Strike is timely, it would deny it on the merits.

    b. <u>Merits</u>

    Although she does not identify any prejudice she would suffer if the Court denies her Motion to Strike, Lee suggests any allegations regarding Stevens' work as a pastor are impertinent "because they carry an implication that he suffered monetary damages as a result of the Defendant's alleged misconduct." Dkt. 15, at 7. "An allegation is 'impertinent' when it is irrelevant and could not be put into evidence between the parties." *Wailua*, 183 F.R.D. at 553 (citation omitted).[10] Lee's public statements accusing Stevens of a sexual

---

[10] Lee suggests the *Wailua* court found a plaintiff's allegation was impertinent because it stated:

> In Wailua's view, Aetna's obligations include, but are not limited to: 1) paying Wailua the sum needed to comply with the . . . law *when* Wailua acquires replacement property of like kind and quality at another location, *as it contemplates doing* because the insurance proceeds are inadequate to rebuild the Hotel.

183 F.R.D. at 559 (emphasis in original). Lee's reliance on *Wailua* is misplaced. First, the *Wailua* court did not strike the aforementioned allegation as impertinent, but instead dismissed plaintiff's amended insurance coverage declaratory judgment claim because, given this allegation, the plaintiff was "impermissibly seeking an advisory opinion." *Id*. at 559. Specifically, plaintiff asked the court "to determine Defendants' obligations based on a series of hypothetical situations that may never materialize, i.e., the extent of Defendants' obligations *if* Plaintiff buys replacement property, *if* Plaintiff chooses not to buy replacement property, etc." *Id*. (emphasis in original). Thus, even if the *Wailua* court declared plaintiff's rights with respect to insurance coverage, such a declaration would only be of value if the plaintiff chose to acquire a replacement property. *Id*. Lee attempts to analogize this holding to her case, arguing Stevens' statements regarding his pastoral work would have value "**ONLY AND ONLY IF** Plaintiff can prove that he suffered such losses." Dkt. 15, at 7 (emphasis in original). Unlike seeking a declaration with respect to damages for a future event that may or may not occur, as did the plaintiff in *Wailua*, here Stevens seeks damages for the losses he contends Lee *has already caused*. Stevens' allegations regarding his work as a pastor are relevant to his non-economic losses and are

offense involving minors are clearly incompatible with his work—whether paid or volunteer—as a pastor. *Sadid*, 943 F. Supp. 2d at 1134–35 (explaining statements are per se defamatory if they impute to the plaintiff a criminal offense or serious sexual misconduct). That Stevens is a pastor could thus be put into evidence and is not impertinent. *Wailua*, 183 F.R.D. at 553.

In addition, Lee seeks to strike Stevens' allegation that the "congregation of the church in which [he] was a pastor has diminished significantly" due to Lee's allegedly defamatory statements. Dkt. 15, at 7, 10. This allegation is not impertinent because it is potentially relevant to both of Stevens' claims. For example, with respect to his defamation claim, Stevens may be able to establish—through an expert witness or treatment provider— that the purported diminishment in his congregation caused him to suffer compensable emotional distress. If the jury finds Lee's statements were per se defamatory, Stevens will not need to prove special damages, and the jury may consider the alleged reduction in Stevens' congregation when assessing the reputational and other presumed damages Stevens suffered. *Sadid*, 943 F. Supp. 2d at 1134 (explaining a plaintiff may receive an award of general damages without allegation or proof of special damages in a defamation per se case). The Court thus rejects Lee's argument that any references to Stevens' position as a pastor should be struck as impertinent.

Finally, Lee complains that Stevens' Rule 26(f) disclosures were deficient and that the portions of Stevens' Initial and Subsequent Disclosures referencing his position as a

---

not impertinent.

MEMORANDUM DECISION AND ORDER - 17

pastor should be stricken as a result. Dkt. 15, at 6. Lee's attempt to strike Stevens' Initial and Supplemental Initial Disclosures is improper and is beyond the scope of a Motion to Strike. *U.S. v. Crisp*, 190 F.R.D. 546, 550 (E.D. Cal. 1999) ("The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings."); *Sidney-Vinstein*, 697 F.2d at 885 ("Under the express language of [Rule 12(f)], *only* pleadings are subject to motions to strike.") (emphasis added). Lee's attempt to strike Stevens' Rule 26 Initial and Subsequent Disclosures is, thus, denied.

c. <u>Conclusion</u>

Lee's Motion to Strike is untimely and is also improper to the extent it asks the Court to strike matters outside of the pleadings. Further, Lee has not shown that Stevens' position as a pastor in either "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. Proc. 12(f). As explained herein, the Court finds Stevens' allegations regarding his pastoral work are potentially relevant to both of his defamation claims. Lee's Motion to Strike is accordingly denied in its entirety.

**V. ORDER**

Now, therefore, **IT IS HEREBY ORDERED:**

1.  Lee's Motion to Dismiss (Dkt. 14) is **DENIED**.

2.  Lee's Motion to Strike (Dkt. 15) is **DENIED.**

DATED: February 22, 2024

David C. Nye
Chief U.S. District Court Judge